UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KRISTINA ANDERSON,<br><br>　　Plaintiff<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>　　Defendants | Case No.: 2:24-cv-01162-APG-DJA<br><br>**Order 1) Granting Las Vegas Metropolitan Police Department and Picerne Sunset Defendants' Motions for Summary Judgment, and 2) Denying as Moot Las Vegas Metropolitan Police Department Defendants' Motion for Judgment on the Pleadings**<br><br>[ECF Nos. 59, 71, 74] |

　　Kristina Anderson sues Las Vegas Metropolitan Police Department and three of its employees: Officer Bettencourt, Detective Gifford, and Detective Weghorst (collectively, LVMPD defendants); and Picerne Sunset, LLC and DRPRMP Manager, LLC (collectively, Picerne Sunset defendants) for seven claims arising from a physical altercation and alleged false arrest at the Level 25 Picerne Sunset apartment complex.  Anderson asserted three state law claims against Picerne Sunset for negligence; respondeat superior liability; and negligent hiring, training, and supervision.  She also asserted state law claims against LVMPD and its individual officers for negligent hiring and supervision, assault and battery, false imprisonment, and intentional infliction of emotional distress (IIED).  Additionally, she asserted claims under 42 U.S.C. § 1983 for Fourth and Fourteenth Amendment violations, as well as supervisory and entity liability against the LVMPD defendants.

　　I previously dismissed with prejudice the negligent hiring, training, and supervision claim against the LVMPD defendants. ECF No. 36 at 7-8.  I dismissed Anderson's claims for IIED,

Fourteenth Amendment violations, federal supervisory liability, and *Monell*[1] entity liability, as well as claims against the named officers, with leave to amend the complaint. *Id.* at 20. Anderson did not amend her complaint so only the following claims remain: (1) negligence against Picerne Sunset; (2) respondeat superior liability against Picerne Sunset; (3) negligent hiring, training, and supervision against Picerne Sunset; (4) assault and battery against unidentified LVMPD police officers and LVMPD; (5) false imprisonment against unidentified LVMPD police officers and LVMPD; and (6) Fourth Amendment violations against unidentified LVMPD police officers.

Both the LVMPD defendants and the Picerne Sunset defendants move for summary judgment, and the LVMPD defendants also move for judgment on the pleadings. I grant summary judgment in favor of the Picerne Sunset defendants because Anderson has not offered any evidence to rebut the facts showing that they discharged their duty of care. I also grant summary judgment in favor of the LVMPD defendants because the body worn camera establishes that no reasonable jury could find in Anderson's favor on her claims. I accordingly deny the motion for judgment on the pleadings as moot.

## I. FACTS

The parties are familiar with the facts, so I repeat them only as necessary to resolve the pending motions. Anderson alleges the following: in May 2022, she was harassed by an unidentified man (John Doe) at the Level 25 apartment complex managed by the Picerne Sunset defendants. ECF No. 1-2 at 5. Picerne Sunset staff were warned that Anderson had been harassed and would be imminently attacked by John Doe. *Id.* Despite this warning, Picerne Sunset employees failed to take timely remedial measures. *Id.* Shortly thereafter, while still at

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Level 25, Anderson was assaulted and battered by John Doe. *Id.* She sustained severe injuries from this attack. *Id.*

She further alleges that when LVMPD arrived at Level 25, "an unidentified Metro Officer, in [an] apparent attempt to bait the [John Doe] assailant out [of an apartment]," instructed Anderson to walk to the pool area. *Id.* at 6. When she entered the pool area, "an unidentified male with no apparent police uniform or visible badge" shoved Anderson to the ground and kicked her until an officer intervened. *Id.* The encounter caused Anderson additional, serious injuries. *Id.* Sometime thereafter, Anderson overheard an officer say, "we need to do something to fix this." *Id.* Unidentified individuals then placed her in handcuffs, told her she was being arrested for battering a police officer, and took her to the Clark County Detention Center against her will until she was bailed out. *Id.*

The defendants tell a different story. According to an incident report filled out by a Picerne Sunset employee, immediately after learning that a man had shoved and scared a woman, their employee called 911. ECF No. 71-12 at 2. Neither Picerne Sunset nor their employees were involved in Anderson's subsequent interaction with the responding officers. *Id.*; ECF No. 71-13 at 3-4. Further, Picerne Sunset employees were not involved in Anderson's initial assault by John Doe, later identified as Jan Figueroa. ECF Nos. 71-12 at 2; 71-13 at 3-4; 71-14 at 2.

Both the Picerne Sunset defendants and the LVMPD defendants described the events as captured on Officer Sanchez's body worn camera (BWC) between minutes 1:16 and 2:20.[2] Sanchez entered the pool area and instructed everyone to leave after Figueroa jumped into the pool. ECF. No. 60-1, Sanchez BWC at 1:16-2:08. Anderson and Detective Weghorst stood outside the pool area's locked gate, and Sanchez ran over to let Weghorst in. *Id.* at 2:08-2:13.

---

[2] All timestamps refer to the run-time on the video file and not the run-time on screen.

3

Sanchez was in her uniform and Weghorst was in plain clothes. *Id.* At this time, Anderson shouted that "he," referring to Figueroa, had assaulted her and threatened her life. *Id.* Sanchez responded, "Okay, we understand, that's why we're here." *Id.* Sanchez then opened the gate for Weghorst, and Anderson attempted to push past him to enter the pool area. *Id.* at 2:13-2:15. Weghorst blocked her from entering the gate by pushing her back and Sanchez shouted, "Let him in!" to which Anderson replied, "I need my phone!" *Id.*; ECF No. 60-3 at 3. Weghorst told Anderson to "back up" and tried to shut the gate door, but Anderson pulled the gate open in another attempt to enter. ECF No. 60-1, Sanchez BWC at 2:15-2:18. Weghorst again told Anderson to "back up" and Sanchez pushed Anderson's shoulder with one hand, causing her to fall to the ground outside the gate. *Id.* at 2:18-2:20. Sanchez then closed the gate and assisted in arresting Figueroa. *Id.*; ECF No. 60-2 at 3.

      Officer Bettencourt's BWC captures Anderson's arrest. Weghorst and Bettencourt walked through the gate and Weghorst put Anderson in handcuffs. ECF No. 60-9, Bettencourt BWC at 5:06-5:16. Anderson said, "I'm sorry, I just wanted my phone." *Id.* at 5:16-5:28. Bettencourt then walked Anderson through the pool area into the parking lot. *Id.* at 5:28-7:15. Neither videotape depicts an officer kicking Anderson or saying that they needed to "fix" things.

      While this lawsuit has been pending, Anderson has failed to appear for her scheduled depositions twice, has not provided written discovery responses, and did not provide a HIPAA authorization to access her medical records. ECF Nos. 60-15 at 2-3; 60-16 at 2-4; 60-18 at 4-5; 60-20 at 5-6. Based on these facts and Anderson's actions in this lawsuit, the defendants move for summary judgment on all claims.

////

////

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* Where a party's version of events is utterly discredited by a videotape such that no reasonable jury could believe it, I view the facts as depicted by the videotape. *Id.* at 380-81.

Anderson did not respond to either of the defendants' motions for summary judgment. Nevertheless, the defendants still bear the burden of showing there is no genuine dispute of

material fact and that they are entitled to judgment as a matter of law. *See, e.g., Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (Rule 56 "prohibit[s] the grant of summary judgment by default even if there is a complete failure to respond to the motion" (quotation omitted)).  However, because Anderson did not "properly address [the defendants'] assertion of fact" by filing a response brief, I may consider the defendants' facts undisputed and grant summary judgment if the motion and supporting materials "show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

**A. All of Anderson's Claims Against the Picerne Sunset Defendants Fail as a Matter of Law.**

The Picerne Sunset defendants argue that there is no genuine dispute of material fact regarding Anderson's claims for negligence, respondeat superior, and negligent hiring, training, and supervision.  Because Anderson has failed to respond to the evidence showing that they satisfied their duty of care, I grant their motion for summary judgment.

1. <u>Anderson's Negligence Claim Fails Because She Does Not Refute the Record Showing the Picerne Sunset Defendants Satisfied Their Duty of Care.</u>

Anderson asserts a state law claim for negligence against Picerne Sunset.  To succeed on a negligence claim, Anderson must prove: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't*, 180 P.3d 1172, 1175 (Nev. 2008) (en banc).  "A business owes its patrons a duty to keep the premises in a reasonably safe condition for use." *FGA, Inc. v. Giglio*, 278 P.3d 490, 496 (Nev. 2012) (simplified).  Generally, "no duty is owed to control the dangerous conduct of another or to warn others of [such] dangerous conduct" unless there is "(1) a special relationship . . . between the parties or between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is

foreseeable." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280-81 (Nev. 2009) (en banc). "The proprietor has a duty to take affirmative action to control the wrongful acts of third persons where he has reasonable cause to anticipate the act and the probability of injury." *El Dorado Hotel, Inc. v. Brown*, 691 P.2d 436, 440 (Nev. 1984) (quotation omitted), overruled on other grounds by, *Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750 (Nev. 1999).

Anderson alleged in her complaint that Picerne Sunset failed to act reasonably and promptly and failed to provide adequate security. ECF No. 1-2 at 7-8. Picerne Sunset argues they could not have reasonably anticipated Figueroa's unlawful conduct because he was a tenant of the building who had a right to be on the premises, and they did not know of the harassment and assault until after it occurred, at which point they immediately contacted the police. Additionally, Picerne Sunset argues they did not cause Anderson's injuries because Figueroa, the LVMPD officers, and Anderson herself were intervening causes that led to the injuries.

Viewing the evidence in the light most favorable to Anderson, no reasonable jury could conclude that Picerne Sunset breached their duty of care. In an incident report, a Picerne Sunset employee described a man acting erratically before the employee received a report that the man had shoved a woman and scared her, at which point the employee called the police. ECF No. 71-12 at 2. Anderson has failed to provide any facts to refute this account. She points to no evidence that Picerne Sunset should have foreseen Figueroa's conduct and taken additional action as a result. Furthermore, although Anderson's injuries caused by her altercation with the LVMPD officers occurred on Picerne Sunset's property, no reasonable jury could find that Picerne Sunset should have foreseen and warned Anderson against the consequences of her interference with a police operation. I therefore grant Picerne Sunset's motion for summary judgment on the negligence claim.

2. <u>Anderson's Respondeat Superior Claim Fails Because it is Not an Independent Cause of Action.</u>

To establish respondeat superior liability, Anderson must show that Picerne Sunset's employee was under Picerne Sunset's control and acting within the scope of their employment. *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980). Anderson alleges that Picerne Sunset is vicariously liable for their employee's negligence under this theory. ECF No. 1-2 at 8. However, vicarious liability is not an independent cause of action, but rather a theory for assigning liability to employers for their employees' negligence. *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028-29 (D. Nev. 2013). Anderson has not alleged facts that dispute Picerne Sunset's incident report that showed a prompt response by their employees. Because no reasonable jury could find that a Picerne Sunset employee acted negligently, liability cannot vicariously attach to Picerne Sunset. I therefore grant Picerne Sunset's motion for summary judgment on the respondeat superior claim.

3. <u>Anderson's Negligent Hiring, Training, and Supervision Claim Fails Because She Does Not Refute the Record Showing the Picerne Sunset Defendants Satisfied Their Duty of Care.</u>

To establish a claim for negligent training and supervision in Nevada, Anderson "must show (1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Id.* at 1028 (quotation omitted). "An employee's wrongful behavior does not in and of itself give rise to a claim for negligent training and supervision." *Id.* "[T]here must also be evidence that the employer was negligent in ensuring [the employee's] fitness for the position." *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 839 (D. Nev. 2021).

Anderson's complaint alleges that Picerne Sunset failed to properly hire, train, and supervise employees and security staff. ECF No. 1-2 at 8-9.  Picerne Sunset contends that their employee's actions did not cause Anderson's alleged injuries because Figueroa's attack was unforeseeable and their employees contacted the police immediately afterwards.  Anderson has not offered any facts raising a genuine dispute that Picerne Sunset's policies or practices (or lack thereof) regarding hiring, training, or supervision led to her injuries.  I therefore grant Picerne Sunset's motion for summary judgment on the negligent hiring, training, and supervision claim.

**B. All of Anderson's Claims Against the LVMPD Defendants Fail as a Matter of Law.**

The LVMPD defendants contend there is no genuine dispute of material fact for trial; in the alternative, they argue I should enter terminating sanctions based on Anderson's failure to participate in discovery.  Because I grant their motion for summary judgment, I deny their request for terminating sanctions.

    1. <u>Anderson's Assault and Battery Claim Fails Because the LVMPD Defendants Used Objectively Reasonable Force.</u>

To establish a case for assault in Nevada, Anderson must show that the LVMPD officers "(1) intended to cause harmful or offensive physical contact, and (2) [she] was put in apprehension of such contact." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing the Restatement (Second) of Torts § 21 (1965) when analyzing a civil assault claim under Nevada law).  To establish a case for battery in Nevada, Anderson must show "an intentional and offensive touching of a person who has not consented to the touching." *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (Nev. 2016) (en banc) (quotation omitted).  A police officer is liable for battery when they use "more force than is reasonably necessary to effect a lawful arrest." *Yada v. Simpson*, 913 P.2d 1261. 1262 (Nev. 1996) (quotation omitted),

superseded by statute on other grounds as recognized by *RTTC Commc'n, LLC v. Saratoga Flier, Inc.*, 110 P.3d 24 (Nev. 2005) (en banc). An alleged battery by a police officer thus "mirrors federal civil rights law," so an officer is liable when the level of force "exceeds that which is objectively reasonable under the circumstances." *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) (interpreting Nevada state law).

Anderson alleges that an unidentified male, with no apparent police uniform or visible badge, shoved her to the ground and that she was kicked before being arrested and put in handcuffs, presumably to deter her from filing suit. ECF No. 1-2 at 6. However, the BWC footage shows that Weghorst, who was out of uniform, pushed Anderson in response to her own push and to block her from entering the gate to the pool area, and that Sanchez (a female officer in uniform) pushed Anderson to the ground outside the gate to close it and prevent Anderson from interfering with Figueroa's arrest. ECF No. 60-1, Sanchez BWC at 2:13-2:18; *see also* ECF Nos. 60-2 at 3 (Sanchez stating she pushed Anderson to allow Weghorst to enter the pool area); 60-3 at 3 (Weghorst stating he pushed Anderson to protect himself from her own push). The footage does not show anyone kicking Anderson. *See* ECF Nos. 60-2 at 3 (Sanchez stating she never saw anyone kick Anderson); 60-3 at 4 (Weghorst stating the same).

Both Weghorst and Sanchez intentionally pushed Anderson during the altercation, and there are no indicia that Anderson consented to this contact. ECF. Nos. 60-1, Sanchez BWC at 2:13-2:18; 60-2 at 3 (Sanchez stating she pushed Anderson once); 60-3 at 3 (Weghorst stating he pushed Anderson). However, even viewing the facts in the light most favorable to Anderson, a reasonable jury could not find that it was objectively unreasonable for Weghorst to push Anderson to block her from entering the pool area while the officers were arresting Figueroa. Weghorst did not push Anderson to the ground, he only pushed her back to keep her from

entering the gate. ECF Nos. 60-1, Sanchez BWC at 2:13-2:18; 60-3 at 3 (Weghorst stating Anderson remained on her feet after his push). Weghorst did not injure Anderson and only matched the force that Anderson herself used while attempting to push Weghorst aside. *Id.* Because Weghorst was a police officer attempting to effect an arrest and this was an objectively reasonable amount of force, Weghorst did not assault or batter Anderson.

Additionally, it was objectively reasonable for Sanchez to push Anderson down to close the gate and prevent her from interfering with Figueroa's arrest. Both Sanchez and Weghorst repeatedly told Anderson to back up, and Sanchez had already attempted to close the gate when Anderson re-opened it, at which point Sanchez pushed Anderson's shoulder, causing her to fall to the ground outside the gate. ECF Nos. 60-1, Sanchez BWC at 2:13-2:18; 60-2 at 3 (Sanchez stating Anderson ignored their commands and continued trying to enter the gate when Sanchez pushed her). Sanchez used reasonable force to ensure that Anderson would not enter the pool area and interfere with Figueroa's arrest. *See* ECF No. 60-2 at 3. As with Weghorst, Sanchez was a police officer attempting to effect an arrest and she used an objectively reasonable amount of force. No reasonable jury could find that Sanchez assaulted or battered Anderson when she pushed her. I thus grant the LVMPD defendants summary judgment on the assault and battery claim.

    2. <u>Anderson's False Imprisonment Claim Fails Because the LVMPD Defendants had Probable Cause to Arrest Her.</u>

To establish a claim for false imprisonment, Anderson must "prove that [she] was restrained of [her] liberty under the probable imminence of force without any legal cause or justification." *Garton v. City of Reno*, 720 P.2d 1227, 1228 (Nev. 1986) (simplified). "There is no false imprisonment where [an] accused is imprisoned under [a] valid legal process." *Nelson v.*

11

1  *City of Las Vegas*, 665 P.2d 1141, 1144 (Nev. 1983).  An arrest supported by probable cause
2  amounts to detention under a valid legal process, and it cannot give rise to a claim for false
3  imprisonment. *See Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (affirming
4  dismissal of false imprisonment claims where police had probable cause to arrest).

5        "Probable cause exists when, under the totality of the circumstances known to the
6  arresting officers (or within the knowledge of the other officers at the scene), a prudent person
7  would believe the suspect had committed a crime." *Blankenhorn v. City of Orange*, 485 F.3d
8  463, 471 (9th Cir. 2007) (quotation omitted).  "[P]robable cause means [a] fair probability, not
9  [a] certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065,
10 1069 (9th Cir. 2006) (en banc) (quotation omitted).  It is "not a high bar." *Kaley v. United States*,
11 571 U.S. 320, 338 (2014).

12       Nevada Revised Statutes § 200.481 makes it a crime to use any willful and unlawful
13 force or violence against a person who possesses some or all the powers of a peace officer.
14 Nevada Revised Statutes § 197.090 makes it a crime to, "by means of any threat, force, or
15 violence, attempt[] to deter or prevent any executive . . . officer from performing any duty
16 imposed upon the officer by law, or who knowingly resists by force or violence any
17 executive . . . officer in the performance of" their duty.

18       Anderson claims the LVMPD defendants arrested her without just cause or authority in
19 order to deter her from suing them. ECF No. 1-2 at 6, 10-11.  The LVMPD defendants argue
20 they had probable cause to arrest and detain Anderson for violating § 200.481 and § 197.090
21 because she battered Weghorst and interfered with the officers' attempt to arrest Figueroa.

22       Viewing the facts in the light most favorable to Anderson, no reasonable jury could
23 conclude that the LVMPD officers lacked probable cause to arrest her.  The BWC footage shows

that Anderson pushed Weghorst when she tried to enter the pool area, and that she did not back up and allow him through the gate to assist with Figueroa's arrest when she was told to do so. ECF No. 60, Sanchez BWC at 2:13-2:18. Based on these actions, the officers had probable cause to believe that Anderson used unlawful force on a peace officer and attempted to deter an officer from arresting Figueroa. No reasonable jury could find otherwise. I therefore grant the LVMPD defendants summary judgment on the false imprisonment claim.

    3. <u>Anderson's Fourth Amendment Claim Fails Because the LVMPD Defendants Used Objectively Reasonable Force.</u>

To establish liability under 42 U.S.C. § 1983, a plaintiff must show both violation "of a right secured by the constitution or laws of the United States," and that the violation "was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quotation omitted). The parties do not dispute that the LVMPD defendants acted under color of state law.

A person is seized under the Fourth Amendment when an officer either applies physical force or acquires control over that person. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). A seizure by physical force requires "the use of force with intent to restrain." *Torres v. Madrid*, 592 U.S. 306, 317 (2021) (emphasis omitted). "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). Moreover, "[a]llegations of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010). In considering an excessive force claim, I evaluate "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (simplified). This

generally means considering "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Id.* (quotation omitted). I determine the importance of the government's interest by analyzing "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).

Anderson alleges Fourth Amendment violations based on the altercation at the pool gate, her subsequent arrest, and the post-arrest detention, arguing that the officers used excessive force and unreasonably seized her. ECF No. 1-2 at 12. Specifically, she contends the officers shoved her from behind, kicked her while on the ground, falsely accused her of a crime, and maliciously detained her without reasonable belief that she had committed a crime. *Id.* The LVMPD defendants argue that their officers used reasonable force against Anderson given the circumstances as shown by the BWC footage, and that they had probable cause to arrest her.

Viewing the facts in the light most favorable to Anderson, no reasonable jury could find that the officers used objectively unreasonable force. As discussed above, the type and amount of force Weghorst and Sanchez inflicted on Anderson were pushes only to the extent necessary to control the area to arrest Figueroa. ECF No. 60, Sanchez BWC at 2:13-2:18. Anderson pushed Weghorst as she attempted to get through the gate, and she tried to open the gate again even after the officers told her to back up, showing that she was not responding to verbal commands. *Id.*; ECF No. 60-2 at 3 (Sanchez stating that Anderson ignored their commands and continued trying to enter the gate when Sanchez pushed her). Therefore, the use of force was

necessary. The officers had an important interests in keeping Anderson from entering the pool area so they could protect her from Figueroa, who had already assaulted her, and in controlling Figueroa to arrest him. On balance, the officers' force was objectively reasonable to protect these important interests. No reasonable jury could find that the officers' actions were objectively unreasonable. And as discussed above, the officers had probable cause to arrest Anderson, so her arrest and detention were objectively reasonable as well. I therefore grant the LVMPD defendants summary judgment on Anderson's Fourth Amendment claim.

### III. MOTION FOR JUDGMENT ON THE PLEADINGS

The LVMPD defendants moved for judgment on the pleadings, arguing that because Anderson did not name and serve the unidentified LVMPD officers, her surviving claims should be dismissed. Because I grant the LVMPD's motion for summary judgment, I deny the LVMPD's motion for judgment on the pleadings as moot.

### IV. CONCLUSION

I THEREFORE ORDER that the defendants' motions for summary judgment **(ECF Nos. 59, 71) are GRANTED.**

I FURTHER ORDER that the LVMPD's motion for judgment on the pleadings **(ECF No. 74) is DENIED as moot.**

I FURTHER ORDER the clerk of court to enter judgment in favor of the defendants on all claims and to close this case.

DATED this 20th day of October, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE